May it please the Court, my name is Derek Elitich, and I'm here representing Stanley Burrell, also known as Mc Hammer. Could you spell it this time, with an E or a U? With a U, Your Honor. I'd like to reserve two minutes for rebuttal, if I could. This is an appeal from the District Court's decision denying Mr. Burrell's motion to set aside the default and vacate an amended default judgment that was entered in June 2009. The Court denied that motion for various reasons, timeliness, also that we did not show excusable neglect. Mr. Burrell is now on the hook for $400,000 in a case where there were 14 other defendants. The plaintiff in that case had taken default against some of those defendants, had settled out. We don't know if there was any money exchanged in those settlements, and had dismissed most of them. In the course of briefing this for the District Court, plaintiffs filed a declaration where they said that the plaintiffs had only met Mr. Burrell on one occasion, and that was after they had already invested in the company, which would tend to render the claim that he fraudulently induced them moot. Let me ask you a question that is most concerning to me. If there is a motion which is to be filed under Rule 60B, must not that motion be filed within a year of final judgment? Yes, Your Honor. That's Rule 60C1. That's the rule. And at that point, if not filed within the year, the District Court has no discretion to grant the motion, do they? That's correct. So in that particular situation, I would look at whether there was a judgment which was filed, because Rule 58 would suggest that a final judgment must be entered on a separate piece of paper and filed. That was done in this case, correct? That's correct, Your Honor. So in that situation, do we even have jurisdiction to look at this? Yes, you do. Well, first of all, let me ask that in two ways. Did you appeal that specific issue to us? Yes, Your Honor. Where? If you look in our opening brief, we go through the Pioneer-Briones. Well, that's a 60B. We're not talking about that. We're talking now about appealing the fact the District Court got this a year after final judgment. Your Honor, we discuss at length in the opening brief, beginning on page 13, on to page 14, in connection with the length of delay standard under Pioneer-Briones that Rule 60C1 was satisfied here, because it is undisputed that we filed our motion to set aside the default within a year of the amended judgment. What is disputed is, well, what started the clock running. Was it the original default judgment back in 2004, or was it the amended default judgment in June of 2009? Judge Fogle and I had an extended conversation about this during oral argument in October of 2009, and I posited the following thoughts with him. First, the whole reason that plaintiffs went out and amended the judgment that they had in 2004 is it was unenforceable. The record is replete with examples of them trying to garnish Mr. Burrell's wages, trying to levy writs of execution. They don't work because the name was wrong. Mr. Tagawa, who is a very good attorney, takes this case over in early summer 2009 and realizes correctly that if he was going to get anything out of this judgment, he had to get that name right, get the record straight. So he goes in and files this administrative motion that Mr. Burrell did not have an opportunity to oppose, and he gets the amended judgment that is now something he can work with. He can go out and do things to try to collect this amount. Was Mr. Burrell ever served with that motion to amend the judgment? He was served by mail, Your Honor. And when was the – when was that service? June of 2009. And when was the unopposed – allegedly unopposed motion decided? It was also decided in June of 2009, within about three or four days. So if I may continue, so – It's my understanding that Burrell does not challenge the district court's ruling that the complaint was served properly. Not on this appeal, Your Honor. So if he received proper service, then how can it be an abuse of discretion for the judge to have made the ruling he did? Because, Your Honor, we have shown excusable neglect. It's more complicated than simply acknowledging that he received service at the summons and complaint. Obviously – Well, we do have a case on the books from 1993, Harmon v. Harper, which suggests that the correction of a clerical error does not extend the time to file an appeal. I don't understand that. I do understand that, Your Honor. But what we're talking about here – What we're really talking about then is whether, in this instance, since it's a D.J. decision, and if we can get past the fact that whether you appealed the ultimate issue, in my mind, we're at a 60 v. 1 issue, again we're on an abuse of discretion. Yes, Your Honor. And then I would argue, putting the timeliness argument aside, that there was an abuse of discretion. The Pioneer-Brioni standard that we all noted in the first argument today is a – is something that wasn't adequately dealt with by Judge Fogel in the district court below. One of the four pillars of that test is prejudice to the plaintiff here in setting aside the default judgment, and their entire evidence submitted to the district court is a one-sentence line in a declaration, I'll be prejudiced if you set aside the default judgment. There's no analysis, no evidence, no argument to back that up. Yet the district court said that there would be prejudice because it's been such a long time. I think that that is not a proper inference for him to draw from one sentence, especially given that Mr. Burrell is presenting countervailing arguments, the extent to which he would be prejudiced here. Again, there's multiple defendants. He's the only one that they're pursuing. He finally comes to a point where there's an amended judgment that's worth something, that actually they could go out and levy on. That starts the clock ticking. He goes out and follows Rule 60c1 to a tee. He files within a year to amend, to vacate that default, that amended default judgment. And, you know, they can't have it both ways. They can't say, well, you should have appealed this in 2004 or moved to set it aside in 2004, and then also say that we needed to go in and get this new judgment in 2009 because we couldn't do anything with the judgment in 2004. I would assume that Mr. Burrell knew that they were trying to collect a judgment during the past five years or so because he showed it by the debtor inquiry number one, and he said, I think, that he disregarded the paper because the name was misspelled. But how did he know that they were trying to collect a judgment against him? Mr. Burrell is a hip-hop artist. He's not a lawyer. He went to the debtor's exam. He did not understand at the debtor's exam that it was a judgment against him. You have to remember the context here is that the SEC contacted him back in 2000 and told him that they were investigating this. They cleared him, told him to be careful. So he, in his mind, is thinking, well, this is part of that. He never contacted counsel before or after the debtor's exam. He does testify in his declaration testimony that he was, became aware that they were trying, that there was this thing against Burrell, B-E-R-R-E-L, in 2008. He says the first time he realized there was a judgment against him that was enforceable and valid was when he received notice of the amended judgment in June or July of 2009. And then we filed our motion to set aside in September. So he shows up to the courthouse, gives us information, has no idea what's going on. He testifies that he did not realize that there was a judgment against him, that he thought this had something to do with packet switch and the stuff that had come up with the SEC back in 2000. And all we need to do, Your Honor, is show under TCI, provide a consistent and clear explanation that's not incompatible with this. We don't have to, you know, Judge Fogel made a credibility determination here, even though I offered an evidentiary hearing to hear the witnesses. We're providing an explanation that is not at odds with the truth of what happened here and also does not ameliorate the fact that he needed extra assistance to understand what was happening. And with that, my time is up. Thank you. Thank you. Thank you. May it please the Court, I'm Barry Tagawa, attorney for the Plaintiffs Appellees Robert Icho and Icho Group, Inc. With all due respect, Your Honors, I think that there's a song by Simon and Garfunkel called The Boxer that has a very appropriate line. It goes, All lies and jest, still a man hears what he wants to hear but disregards the rest. And that's exactly what we have here. The complaint was originally filed in September 2001. It identified, quote, M.C. Hammer as a defendant along with 15 other defendants, including other fellow board members of his, including a company that he was president of called World Hit, parentheses, M.C. Hammer. He was served twice with the complaint. This administrative or clerical error appeared first in the two proofs of service that was filed by the process server, showing that he was served through substitute service on his wife at his home, and it misspelled his last name as Beryl with an E instead of Beryl with a U. But it identified him on the substitute, on this proof of service, as M.C. Hammer, a.k.a. Stanley Beryl, and identified the person served as his wife, Stephanie Beryl. Well, we have the declarations of both, of Stephanie Beryl, who says that she lived there at the, she and her husband lived there at the time of the service. Clearly, her name was, clearly her name is Stephanie. But basically, despite the fact that the complaint was served on him, he never filed a responsive pleading to the complaint. About a year and a half later, default was entered against him as M.C. Hammer, a.k.a. Stanley Beryl, and about three months or two months later, a default judgment was entered against him as M.C. Hammer, a.k.a. Stanley Beryl. Now, this, at this point, this is, it is an administrative clerical error that the district judge has discretion to clarify on his own, and Judge Fogle states as much in his order that he could have amended this sua sponte if he wanted to. Well, beyond that, a year and 14 months later, Mr. Hammer or Mr. Beryl appears at an examination for judgment debtor, and he answers questions for an hour concerning his assets and assets available to satisfy the judgment that has been rendered against him. And he takes the position that he showed up without counsel, without having consulted counsel before, during, or after this examination of judgment debtor, and left the court without having any clue that he was even a party to this lawsuit. Counselor, we're pretty familiar with the facts of the situation. Do you want to answer counsel's argument that, in effect, this is not a clerical error because the plaintiff could not levy on anything with the judgment it had that didn't give the right name? And, therefore, it is not a clerical error, but a substantial error, and you had to correct the substantial error, and, therefore, the judgment had to start running when the substantial error was corrected? That's his argument. Do you want to answer that? Yes, Your Honor. Well, the plaintiff was levying on whatever. It was taking its steps to levy by doing a writ of attachment and a writ of execution on Mr. Beryl's employer. It sought to garnish his wages. It filed a lien with the county recorder in San Jose or Santa Clara, and that was mailed to Mr. Beryl with another misspelling of his name as Stanley Beryl, or Beryl, rather. The fact is that it is that the plaintiffs were attempting to levy on it. They weren't successful in levying it for reasons other than the misspelling of his name. The reason why they weren't successful is because, apparently, Mr. Beryl has no bank accounts, has shielded himself from his creditors, has basically no assets in his name, but has sheltered it in trusts and various other sorts of devices. Is that in the record? I'm not sure. Well, I guess my worry is this. It seems to me that my ultimate decision here is whether this was a clerical error or whether it wasn't. The judge makes a decision on a discretionary basis, I guess, that he can correct a clerical error. And if I'm to go with him, I have to say this is a clerical error. But it is of some significance to me that one tries to levy on assets and cannot use the judgment entered, and then to suggest that it's mere clerical. Well, I guess I would... This was the stuff you're telling me, the facts you're giving me. Were they presented to the district judge? All of the attempts to levy were presented to the district judge. Yes, Your Honor. Did he understand from the evidence, and I'm looking at what I saw of his record, that there were attempts and they were not able to levy? I believe he knew from the record that there were attempts. And whether or not, you know, they were successful and whether that had been conveyed to him, or what his impression about the success rate of the attempts was, I don't know. Well, if they'd have been successful, the whole case would have been moved. I think that's true. I think that's true. I was just suggesting, was there in this record, as counsel now presents it, that the only reason they weren't successful is because the name was wrong? I mean, that's an argument he now presents, which I'll be fair, I did not find in the record. I don't think that the only reason that the attempts were not successful was because the name was wrong. I don't think that's a fair – it's a fair inference to say that that's why it was unsuccessful or that's why it was necessary to clarify the judgment. I think – It wasn't necessary to clarify the judgment. He couldn't. I think I did it out of an attempt to be as accurate as possible once I discovered the error in the spelling of his name. And I knew that I would be taking further steps to do another examination of judgment debtor on him. I knew how hard it was to serve him personally with the order for examination of judgment. And I knew that before I did that, I wanted to make sure, even though he had shown up for a previous examination of judgment debtor, I wanted to make sure that I was not going to run into further roadblocks from him. I mean, I will say, let's – if we back off and step back for a minute and look at the big picture of this, under Pioneer-Brioni's, it is an equitable standard as to whether or not the district judge should set aside a default judgment. Judge Fogle applied an equitable standard. He looked at the totality of the circumstances. I think he analyzed all of the appropriate factors to be considered, and he reached his decision. I think the test for this Court is to decide whether Judge Fogle abused his discretion in reaching his conclusion. And I think that Judge Fogle has support in the record for all of his findings. I think that there are sound judicial policies supporting all of his findings. And I think that it cannot be said that no reasonable man would conclude the way Judge Fogle did in denying the motion. There are multiple reasons why Judge Fogle's decision is correct. Some of them involve the fact that the motion itself was untimely. But even if you look at the merits of the argument, if you look at the totality of circumstances and all of the equities on both sides, I think Judge Fogle's decision was a fair one. Thank you. Thank you. I think you've exhausted your time, but I'll give you 30 seconds. I think that Judge Fogle realized that his decision on the timeliness issue was soft, and that's why we engaged in the excusable neglect analysis. Mr. Hammer is now on the hook for a $400,000 judgment that he couldn't possibly have been liable for given some of the admissions in the papers. I think that the equities here and the limited discretion that he had by this Court's case law mean that we should give Mr. Burrell a chance to appear and defend against these charges. There's no prejudice to them. And a tie goes to the person asking to set aside the default under the cases that you all have promulgated. Thank you. Thank you. We will now submit, then, Case 10-15386, Icho v. M.C. Hammer. We have also submitted on the briefs 10-15520, Fayer v. Bond. So this calendar stands adjourned. Thank you, counsel, for your argument.
judges: Collins, Goodwin, Smith N. R.